UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JAN -2 PM 4: 45

CLERK

BY_____ jm
DEPUTY CLERK

FAITH KERESZTESSY,               )
                                 )
        Plaintiff,               )
                                 )
        v.                       )        Case No. 2:22-cv-00204
                                 )
MOUNT SNOW, LTD.,                )
VAIL RESORTS, INC.,              )
THE VAIL CORPORATION,            )
PEAK RESORTS, INC., and          )
VR NE HOLDINGS, LLC,             )
                                 )
        Defendants.              )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR ORDER FOR PHYSICAL EXAMINATION OF
PLAINTIFF PURSUANT TO FED. R. CIV. P. 35(a)**
(Doc. 117)

        Pending before the court is Defendants' motion seeking a physical examination of Plaintiff
by Defendants' medical expert, along with two remote interviews of Plaintiff by Defendants'
experts in life care planning and vocational rehabilitation.  (Doc. 117 at 1.)  Defendants Mount
Snow, Ltd., Vail Resorts, Inc., The Vail Corporation, Peak Resorts, Inc., and VR NE Holdings,
LLC ask the court to compel Plaintiff's attendance at the physical examination, as well as the two
remote interviews.  *Id.*  Plaintiff opposes: 1) the physical examination by Defendants' medical
expert; 2) the remote interview by Defendants' life care planning expert; and 3) the remote
interview by Defendants' vocational rehabilitation expert.  (Doc. 121 at 1.)  Should the court grant
the physical examination or interviews, Plaintiff requests the court impose restrictions upon them.
(Doc. 121 at 12.)

        Chris S. Dodig, Esq., Gregory P. Howard, Esq., Kyle G. Christensen, Esq., and Stephen J.
Brouillard, Esq. represent Plaintiff.  Craig R. May, Esq., Gabrielle L. Lombardi, Kristen L. Ferries,
Esq., and Thomas P. Aicher, Esq. represent Defendants.  A hearing was held on this motion on
November 13, 2024, after which the court took the matter under advisement.  At the court's request,
and without objection from either party, defense counsel provided the court with copies of the

reports prepared by Plaintiff's life care planning and vocational rehabilitation expert shortly after the hearing.

## I. Factual and Procedural Background.

In this lawsuit, Plaintiff asserts claims of negligence including premises liability and negligence against Defendants stemming from a fall off of a metal service catwalk on top of a ski lift terminal on September 20, 2020. (Doc. 112 at 6, 8, 10, 12, and 14.) Plaintiff alleges that, because of this accident, she has suffered "significant permanent injur[ies] including paraplegia and all related complications," experienced "conscious pain and suffering of body and mind," and incurred "past and future expenses for medical care and treatment" resulting in "loss of enjoyment of life, including the loss of having biological children, and past and future lost earning capacity." (Doc. 112 at 7–9, ¶¶50, 55, 60, 65, 70.) Defendants deny Plaintiff's allegations. (Doc. 114 at 5–6, ¶¶50, 55, 60, 65, 70; Doc. 115 at 6–10, ¶¶50, 55, 60, 65, 70.)

A Fourth Amended Stipulated Discovery Schedule/Order was adopted by the court on July 15, 2024. (Doc. 106.) In that scheduling order, the parties agreed that Plaintiff would provide expert witness reports on or before October 1, 2024, with depositions of those expert witnesses being completed by December 2, 2024. *Id.* at 2. The parties agreed that "[m]otions seeking Rule 35 examinations shall be filed on or before . . . October 20, 2024." *Id.*

Citing Federal Rule of Civil Procedure 35, Defendants notified Plaintiff that their medical expert was prepared to conduct an in-person history and physical examination of Plaintiff on October 15, 2024. (Doc. 117–2 at 1.) Notice was sent to Plaintiff on September 3, 2024. *Id.* Defendants indicated the examination was to be conducted at the medical office of Dr. Nicolson located at 1270 Belmont Avenue, Schenectady, New York 12308. (Doc. 117–2 at 1.) Plaintiff currently resides in Coventry, Rhode Island. (Doc. 121 at 7.) Defendants estimate that Plaintiff's travel time from her home to Schenectady, New York will be approximately three-and-a-half hours each way. (Doc. 117 at 5.)

After receiving Plaintiff's expert reports, including a report from a vocational rehabilitation expert and a life care planning expert, Defendants provided notice to Plaintiff of two remote interviews that it wished to conduct of Plaintiff. (Doc. 117–3 at 1; Doc. 117–4 at 1.) One interview was to be completed by a proffered life care planning expert, and the second interview was to be completed by a proffered vocational rehabilitation expert. Plaintiff did not consent to submit to

the physical examination or the two remote interviews absent court order. (Doc. 117 at 3.) Defendants then filed the instant motion. *Id.* at 1. In her response, Plaintiff opposes both the physical examination by Defendants' medical expert and the two remote interviews by Defendants' life care planning and vocational rehabilitation experts. (Doc. 121 at 1.) Plaintiff requests that, should the court grant the physical examination or the two interviews, the court impose limitations on them. (Doc. 121 at 12.) Where necessary, these limitations will be discussed below.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Federal Rule of Civil Procedure 35 provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). There is, however, no automatic right to a physical or mental examination of an opposing party. *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964). Unlike other discovery rules, Rule 35 limits the court's ability to issue such an order only "on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). The United States Supreme Court has found that the "in controversy" and "good cause" requirements of the Rule are express limits on its use. *Schlagenhauf*, 379 U.S. at 118. These requirements, as stated by the Court,

> are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by others means is also relevant.

*Id.* The Supreme Court continued that the provisions of Rule 35 require "discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause[.]'" *Id.* at 118–19.

Rule 35, like other discovery rules, shall be read broadly and liberally "to effectuate their purpose that 'civil trials in the federal courts no longer . . . be carried on in the dark.'" *Schlagenhauf*, 379 U.S. at 114–15 (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The

Rules, however, should not be expanded beyond their articulated limitations. "Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely in [negligence] cases. The plain language of Rule 35 precludes such an untoward result. *Schlagenhauf*, 379 U.S. at 121–22.

"[I]n all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Courts hold broad authority to deny physical or mental examinations—even if good cause exists. *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994) (citing *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D.Pa. 1990)). "The manner and conditions of a court-ordered medical examination, as well as the designation of the person or persons to conduct such an examination, are vested in the sound discretion of the trial court." *Sanden v. Mayo Clinic*, 495 F.2d 221, 225 (8th Cir. 1974) (citing Fed. R. Civ. P. 35(a)).

"A motion to compel a physical or mental examination pursuant to Fed. R. Civ. P. 35(a) is subject to Fed. R. Civ. P. 26(c)." *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 555 (D. Conn. 2006). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

### B. Disputed Examination and Interviews.

#### 1. Physical Examination by Defendants' Medical Expert.

In her complaint, Plaintiff alleges that she "suffered severe and permanent personal injury, including T11-T12 vertebral fractures and paraplegia with related complications." (Doc. 1 at 4, ¶31.) In her opposition to the request for a physical examination, Plaintiff attached a report from her treating physiatrist who concluded that Plaintiff

> sustained a spinal cord injury that, according to the International Standards for Neurological Classification of Spinal Cord Injury (ISNCSCI) exam developed by the American Spinal Injury Association (ASIA), is classified as T10 AIS A. What this injury classification means is that Faith sustained a motor and sensory complete injury and that nerves below T10 do not show any evidence of preserved function after the injury. A complete injury is the most severe impairment rating on AIS scale and with complete paraplegia it is associated with the lowest likelihood for conversion to lesser impairment rating signified by presence of sensory or motor function below level of injury. Given the four-year span of time since her injury,

4

there is no significant expected recovery at this time. In other words, it is more likely than not that Faith will have no sensory or functional improvement in the future.

Doc. 122–7 at 2. The report also references a "left ischial pressure related ulcer" that has developed into a "stage IV pressure ulcer" which "has led to recurrent bouts of sepsis secondary to osteomyelitis." (Doc. 122–7 at 3.) Due to this pressure ulcer, Plaintiff "is currently on bed rest" and "any therapy, including her typical gym routine, is on hold for at least the next year." *Id.*

The allegations in Plaintiff's complaint and the statements by her treating physiatrist each demonstrate that Plaintiff's physical condition is "in controversy" and provide good cause to allow the defense to conduct a physical examination of her. *Schlagenhauf*, 379 U.S. at 119. Defendants must have a meaningful opportunity to contest the extent and effect of the injuries that Plaintiff suffered. This can only occur with a physical examination conducted by a defense expert. Without a physical examination, Defendants would be left unable to contest assertions made regarding Plaintiff's physical strength, mobility and immobility, and the pressure ulcer, as they would not have the opportunity to assess those conditions.

If a physical examination is ordered, Plaintiff requests that the court impose five limitations upon the physical examination by Defendants' medical expert. First, Plaintiff requests the physical examination take place near her home in Rhode Island. (Doc. 121 at 7–8.) The distance between her residence and the medical office of Dr. Nicolson is over 170 miles. *Id.* Plaintiff contends that requiring her to travel to Schenectady, New York is unreasonable given her current medical condition. *Id.* at 7. Rather than having Plaintiff travel to Schenectady, New York, Plaintiff requests that Dr. Nicolson, or an alternative medical expert, travel to Rhode Island to examine her. *Id.* at 8. Defendants object to this request. (Doc. 127 at 5.)

"Under Rule 35, '[u]sually [the] plaintiff will be required to come to the place where he or she filed suit for the examination, in the absence of facts showing substantial reasons for insisting upon examination at his or her residence.'" *Rodriguez v. Gusman*, 974 F.3d 108, 115 (2d Cir. 2020) (quoting 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2234 (3d ed. 2010)); *see also Williams v. Nguyen*, No. 16-cv-13983, 2017 WL 1177914, at *2 (E.D. La. 2017) ("However, the usual case may give way where the plaintiff can demonstrate that the trip would be injurious to his health, or that there is any other compelling reason for his reluctance.") (internal quotation marks and citation omitted).

Plaintiff is currently on bed rest due to a stage IV pressure ulcer. (Doc. 122–7 at 3.) This complication, coupled with the catastrophic nature of her injuries, demonstrates that requiring Plaintiff to travel to Schenectady, New York, would create an unnecessary risk of further harm. As a result, Plaintiff has established a substantial reason for her inability to travel to Schenectady, New York. The safety interests of Plaintiff must be balanced with Defendants' need for a physical or mental examination; therefore, the examination shall be carried out at a location within 100 miles of Plaintiff's residence. *See Andrews v. Geo Grp., Inc.*, No. 10-CV-02605-MSK-MJW, 2011 WL 5983939, at *2 (D. Colo. 2011) (citing *Schlagenhauf*, 379 U.S. at 118).

Second, Plaintiff requests that the examination be limited to 60 minutes. (Doc. 121 at 8.) Plaintiff argues that Defendants' motion only suggests that a routine physical examination will be conducted; therefore, 60 minutes would suffice. *Id.* Defendants object to this request. (Doc. 127 at 5.)

"Courts generally do not limit the amount of time an examining physician will have to conduct the examination." *Gade v. State Farm Mut. Auto. Ins. Co.*, No. 5:14-CV-00048-CR, 2015 WL 12964613, at *6 (D. Vt. 2015); *see Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009) ("Plaintiff has not proffered sufficient reason for limiting the examination to 45 minutes, and the Court declines to do so."). Defendants have suggested that the examination will not take more than 90 minutes. Plaintiff has not presented any evidence to suggest Defendants' expert will unnecessarily or unprofessionally prolong the examination past its needed length. As a result, the court sees no reason to put a time restriction on the examination and anticipates the examination will be conducted in a reasonable and professional manner.

Third, Plaintiff requests that no one else acting on behalf of Defendants attend the examination and the examination not be recorded. (Doc. 121 at 8.) Defendants agree to this limitation. (Doc. 127 at 5.)

Fourth, Plaintiff requests that she be allowed to have one of her health care providers attend and observe the examination. (Doc. 121 at 8–9.) Defendants object to this request. (Doc. 127 at 5.)

Although the court has authority to permit third parties to be present at a Rule 35 examination, "the majority of federal courts have held that third parties should be excluded absent special circumstances." *Gade*, 2015 WL 12964613 at *3 (quoting *Calderon*, 258 F.R.D. at 526). Plaintiff has failed to show why this court should deviate from this precedence; therefore,

6

Plaintiff's own medical expert is not permitted to attend or observe the examination. Defendants do not oppose Plaintiff's mother being present for the physical examination; thus, she will be permitted to attend the examination to support Plaintiff.

Lastly, Plaintiff requests that no further radiological testing be conducted at the examination. (Doc. 121 at 9.) Defendants agree to this limitation. (Doc. 127 at 5.)

Accordingly, the court GRANTS Defendants' motion for an order for physical examination of the Plaintiff by their medical expert, subject to the requirement that the examination take place within 100 miles of Plaintiff's residence. Further, the court DENIES Plaintiff's requests for durational limits and to allow her medical expert to attend or observe the examination. Plaintiff's mother is permitted to be present during the examination for support.

## 2. Remote Interviews by Defendants' Life Care Planning Expert and Vocational Rehabilitation Expert.

Defendants deposed Ms. Keresztessy on July 7, 2023, and again on August 27, 2024. (Doc. 121 at 2.) According to Plaintiff's vocational rehabilitation expert's report, the deposition held on August 27, 2024 was videotaped. Additionally, Plaintiff's parents were deposed for approximately four hours each on August 26, 2024. (Doc. 121 at 2.) On October 16, 2024, Defendants requested the court compel Plaintiff to submit to two remote interviews by the Defendants' life care planning and vocational rehabilitation experts. (Doc. 117 at 1.) Plaintiff filed her opposition to these interviews on October 28, 2024. (Doc. 121 at 1.)

Plaintiff argues that Rule 35 does not authorize life care planning and vocational rehabilitation interviews. *Id.* at 9. This court declines to address whether Rule 35 permits these types of examinations. Even if Rule 35 permits life care planning and vocational rehabilitation interviews, this court finds that Defendants have not established good cause under the facts presented in this case for ordering these interviews.

Rule 35 examinations require "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 118. "[W]hat may be good cause for one type of examination may not be so for another." *Id.* "Good cause is not established when other and adequate evidence is available for [] review." *Bamberger v. United Nat. Foods Inc.*, No. 21-cv-18-ACR-ZMF, 2023 WL 2424596, at *4 (D.D.C. 2023) (internal quotations omitted).

Defendants have been unable to identify any material information needed by their life care planner and vocational rehabilitation expert that can only be obtained through a physical or mental examination of Plaintiff. In their reply, Defendants assert that "Defendants' experts must assess Plaintiff's physical strength, her pressure ulcer . . . , and her reasoning for abandoning her plans to pursue engineering, among other things." (Doc. 127 at 3.) Defendants will be able to assess Plaintiff's physical strength and pressure ulcer through the physical examination conducted by their medical expert. In Plaintiff's vocational rehabilitation expert's report, Plaintiff provided information as to why she abandoned her plans to pursue engineering. Her responses can be confirmed through the depositions of Plaintiff's experts.

During the hearing, defense counsel indicated there are times when Plaintiff's expert reports may not explain why certain conclusions are reached in terms of what Plaintiff can or cannot do. These are questions that would be best suited for Plaintiff's experts, to explain the bases of their conclusions.

Defendants focus on "having the same access to Plaintiff that Plaintiff's experts had." (Doc. 127 at 3.) This is not the test for determining the appropriateness of a Rule 35 examination. The question is whether Defendants have the information necessary to allow an expert to render an opinion and to challenge the opinion of Plaintiff's experts. In the cases cited by Defendants, the party seeking the examination specified the need for the requested examination. *See Ligotti v. Provident Life & Cas. Ins. Co.*, 857 F.Supp.2d 307, 319 (W.D.N.Y. 2011) (ophthalmologic examination needed to allow defense to evaluate Plaintiff's dry eye syndrome and tear production ability); *Merce v. Greenwood*, No. 2:04-CV-00610 PGC, 2006 WL 8459326, at *1 (D. Utah 2006) (where plaintiff alleges permanent physical injury resulting from medical malpractice, defendant's vocational expert attests she needs to interview Plaintiff "face-to-face [and] administer vocational testing" in order to assess present functional ability and potential employability).

Here, Defendants have not identified any specific assessment or test needed to be performed by their experts during the proposed remote interviews to allow them either to contest the findings of Plaintiff's experts or to form their own expert opinion. Defendants are in possession of Plaintiff's medical records; deposition testimony given by Plaintiff, including a videotape of at least a portion of this deposition; deposition testimony given by her parents, who appear to be her primary caregivers, and others; as well as other discovery. *See Hupp v. Luhr Bros.*, No. 1:21-CV-79-SNLJ, 2022 WL 1982972, at *3 (E.D. Mo. 2022) ("[I]nformation sought in a vocational

examination is available to defendant through medical records, deposition testimony, and the defendant's own employment records."). Additionally, Defendants have their own medical expert who will have the opportunity to personally examine the Plaintiff and provide the results of this examination to Defendants' vocational expert and life care planner.

Defendants' vocational rehabilitation expert possesses enough information to "form a conclusion as to Plaintiff's employment capabilities." *Bamberger*, 2023 WL 2424596 at *4 (citing *Stanislawski v. Upper River Servs., Inc.*, 134 F.R.D. 260, 262 (D. Minn. 1991)) (internal quotations omitted). Similarly, Defendants' life care planning expert has sufficient information to render an opinion as to Plaintiff's needs. Defendants have not identified any information they seek to obtain through a life care planning and vocational rehabilitation interview that they either do not have currently or will not obtain through a physical examination. *See Washam v. BNSF Ry. Co.*, No. 3:19-CV-00231 KGB, 2020 WL 5237759, at *4 (E.D. Ark. 2020). Defendants will still be able to cross-examine Plaintiff's experts, and their experts will have the opportunity to testify at trial as to their conclusions.

Accordingly, the court DENIES Defendants' motion for remote interviews of the Plaintiff by their life care planning and vocational rehabilitation experts.

## CONCLUSION

The court GRANTS IN PART and DENIES IN PART Defendants' Motion for Order for Physical Examination of Plaintiff Pursuant to F.R.C.P. 35(a). (Doc. 117).

SO ORDERED at Rutland, Vermont, this 2nd day of January 2025.

Honorable Mary Kay Lanthier
United States District Court Judge