UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JAN 13 PM 1:46

CLERK

BY_____
DEPUTY CLERK

FAITH KERESZTESSY,
    Plaintiff,

    v.

MOUNT SNOW, LTD., VAIL RESORTS
INC., THE VAIL CORPORATION, PEAK
RESORTS, INC., and VR NE HOLDINGS,
LLC,
    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:22-cv-204

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 140)

Faith Keresztessy ("Plaintiff") filed this negligence action against Mount Snow, Ltd., Vail

Resorts, Inc., The Vail Corporation, Peak Resorts, Inc., and VR NE Holdings, LLC ("Defendants")

following her fall onto a chairlift platform which resulted in tragic injuries. (Doc. 112.)

Defendants filed a Motion for Summary Judgment. (Doc. 140.) Plaintiff filed a Memorandum in

Opposition to Defendants' Motion for Summary Judgment. (Doc. 141.) For the following reasons,

Defendants' Motion for Summary Judgment is DENIED.

### Factual Background

**I.**     **The Undisputed Facts[1]**

Plaintiff's claim arises from an accident at Mount Snow ski resort in West Dover, Vermont.

(Doc. 112.) Plaintiff went to Mount Snow on September 20, 2020 with a group of friends. (*Id.*

¶ 26.) Plaintiff purchased a ticket to ride the Bluebird Express chairlift to the summit of Mount

Snow. (*Id.*) Plaintiff signed a liability waiver before the chairlift ride indicating she was

---

[1] Certain facts in this section are undisputed for purposes of summary judgment only. *See* Fed. R. Civ. P. 56(c)(1).

"responsible for understanding and complying with all signage, including instructions on use of the lifts" while at Mount Snow. (Doc. 141-3 ¶ 5.) Plaintiff understood "she needed to follow all posted signs" at Mount Snow. (*Id.* ¶ 6.)

After lunch at The Bullwheel restaurant, Plaintiff and her friends walked to another chairlift, the Sundance lift. (Doc. 112 ¶ 28.) Across the skier exit ramp of the Sundance lift, a rope held a sign stating, "! DANGER ! This lift could start at any time[.] KEEP OUT[.]" (*Id.* ¶ 29.) While Plaintiff and her friends were at the Sundance lift, they were outside the sight of any Mount Snow employee. (Doc. 141-3 ¶ 22.)



Image of the skier exit ramp of the Sundance lift.

Plaintiff stepped "over the rope and past the sign three times." (*Id.* ¶ 12.) On her third time passing the rope and sign, Plaintiff "walked onto the skier exit ramp of the Sundance lift, stepped over the low-hanging rope, and climbed the metal stairs to the first metal landing[]" above the skier exit ramp to take photographs. (Doc. 112 ¶¶ 32, 40; Doc. 141-3 ¶ 12.) Plaintiff and



Image from above the metal landing looking down at the landing from which Plaintiff fell.



Image from below the metal landing looking up to the landing from which Plaintiff fell.

2

Defendants have described the metal landing above the wooden exit ramp as a "catwalk," and it is pictured here from two angles. (Doc. 141-3 ¶ 19.) While taking photographs, Plaintiff fell backwards through an access point "that had no railing or protective barrier." (Doc. 112 ¶ 41.) Plaintiff landed on the wooden platform below and suffered "severe and permanent personal injury, including T11-T12 vertebral fractures and paraplegia with related complications." (*Id.* ¶¶ 41–42.)

## II.    The Disputed Facts

The parties offer disparate views of the evidence regarding guests accessing non-operational lifts at Mount Snow before Plaintiff's fall and Mount Snow's knowledge of this activity. Defendants provided two charts in which they indicate interviewed or deposed employees of Mount Snow saw guests accessing non-operational lifts between twenty-five and thirty-four times from 1976 to 2024. (Doc. 143-1 at 21–22, ¶ 25.) Plaintiff provided a different summation of the evidence documenting guests accessing non-operational lifts, including evidence of guests accessing non-operational lifts without any evidence to suggest Mount Snow was aware of the incidents. (*See, e.g.*, Doc. 141-3 at 27, ¶¶ 58–60.)

Additionally, Plaintiff's expert testified there has been an increase in the number of trespass incidents at closed lifts in summer across the ski industry as many resorts "expand their operations to include summer lift and mountain experiences." (Doc. 141-23 at 3.) Defendants argue Plaintiff's expert's opinion is "immaterial" as he "has no knowledge of guests accessing non-operational lifts *at Mount Snow*." (Doc. 143-1 at 41, ¶ 61) (emphasis in original). Given the different assessments presented by the parties, the court has reviewed the record for evidence of instances Mount Snow was aware of in which guests accessed non-operational lifts before Plaintiff's fall. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation modified) ("[W]hile a court is not required to consider what the parties fail to point out in their

3

Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."), *abrogated on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Second, Plaintiff denies Defendants' contention that the Sundance lift was "closed" on September 20, 2020, arguing this is "a legal conclusion rather than a statement of fact." (Doc. 143-1 ¶ 10.) Finally, Plaintiff disputes that the sign was clear in the message it conveyed. (*Id.* ¶ 11.) Plaintiff argues the sign "alerted her to the risk that . . . the lift might operate at any time," which warned her that the lift could start but was less clear than a sign containing a warning not to enter without a specific reason. (*Id.* ¶¶ 76–77.) Additionally, Plaintiff notes that the sign did not warn her of the potential danger due to falling from the catwalk because the sign only alerted to the risk of the lift starting, which was not the danger that caused her fall. (*Id.*)

### Standard of Review

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trs. of Columbia Univ. in City of N. Y.*, 131 F.3d 305, 312 (2d Cir. 1997)). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The court has diversity jurisdiction over this case. As a result, the court analyzes Plaintiff's claims under Vermont law. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)).

Plaintiff's negligence claim requires Plaintiff to show there was a legal duty owed by Defendants to Plaintiff, Defendants breached their duty, Defendants' breach of duty was the actual and proximate cause of Plaintiff's harm, and Plaintiff experienced injury. *O'Connell v. Killington, Ltd.*, 665 A.2d 39, 42 (Vt. 1995). The duty of care owed is "primarily a question of law[]," and it is the basis upon which "liability for negligence must be predicated." *Denis Bail Bonds, Inc. v. State*, 622 A.2d 495, 499 (Vt. 1993). Whether Defendants' conduct breached that duty, however, "is usually a jury question." *Merritt v. United States*, 592 F. Supp. 3d 340, 347 (D. Vt. 2022).

<u>**Analysis**</u>

Defendants move for summary judgment on the basis that they did not owe a duty of care to Plaintiff as she was trespassing at the time of her fall. Defendants further argue they owed Plaintiff no duty to protect her from the risk of falling from the structure because it was an "open and obvious danger." (Doc. 140 at 2.)

**I.    Whether Defendants Owed a Duty of Care to Plaintiff**

Possessors of land owe a duty of care to individuals who are legally on the land but, in general, do not owe a duty of care to trespassers. In the past, Vermont law established three categories of entrants onto land: invitees, licensees, and trespassers. *See Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 7, 197 Vt. 176, 102 A.3d 1101. Invitees and licensees are categories of individuals who are lawfully on the land. *Id.* at ¶¶ 11–12. In *Demag*, the Vermont Supreme Court recognized the distinction between "invitees" and "licensees" led to inconsistent outcomes and conflicted with modern social values and negligence principles and collapsed the common-

5

law invitees and licensees into a single category to which a possessor of land owes a duty of reasonable care.[2] *Id.*, ¶ 26. Under Vermont law, a possessor of land owes invitees a duty of reasonable care "such that the invitee 'is not unnecessarily or unreasonably exposed to danger.'" *Id.*, ¶ 11 (quoting *Ball v. Melsur Corp.*, 633 A.2d 705, 711 (Vt. 1993)). Vermont has not, however, changed the common-law rule that a possessor of land generally owes no duty to a trespasser. *Id.*, ¶ 10. A possessor of land "is under no obligation to a trespasser[] . . . to protect him from injury by reason of the unsafe and dangerous condition of the premises." *Trudo v. Lazarus*, 73 A.2d 306, 307 (Vt. 1950).

An invitee can become a trespasser. A land possessor's duty of reasonable care to an invitee "extends only to those portions of the premises to which he has been invited and to which the purpose of his visit may reasonably be expected to take him." *Buzzell v. Jones*, 556 A.2d 106, 108 (Vt. 1989). The duty owed to an invitee "comes to an end[]" when the invitee, "after entering, engages in activities beyond the scope of his permission." *Hillier v. Noble*, 458 A.2d 1101, 1103 (Vt. 1983). In other words, when an invitee exceeds the scope of the invitation, the possessor of land no longer owes them a duty because the invitee has become a trespasser.

**A. Plaintiff was Trespassing.**

A possessor of land can put limits on why, where, and when invitees can be in certain areas of the land. While the existence of a duty is primarily a question of law, *see, e.g.*, *Higgins v. Bailey*, 2021 VT 74, ¶ 9, 215 Vt. 461, 263 A.3d 1252, a court must submit the question to the jury if evidence conflicts regarding the scope of the invitation given and if the duty owed depends on the jury's view of that evidence, *see Sanville v. Williams*, 418 A.2d 860, 861–62 (Vt. 1980). *See also Higgins*, 2021 VT 74 at ¶ 10 (existence of a legal duty may sometimes rely in part on a factual

---

[2] The single category combining invitees and licensees will be referred to as invitees for simplicity.

determination to be made by the jury). "The nature of the invitation and its purposes, custom, and reasonable expectations of the invitee are usually a clear guide" to the scope of the invitation. *See* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 275 (2d ed. 2011).

In *Hillier*, the defendant gave a limited invitation to the plaintiff to enter the defendant's land to retrieve his soccer ball when it went over the fence. 458 A.2d at 1103. The plaintiff entered the defendant's land the following day to retrieve "his cat which had strayed there." *Id.* While the plaintiff was retrieving his cat, the defendant's dog, which was on a chain in the yard, bit him. *Id.* The *Hillier* court concluded the plaintiff was a trespasser because he "enter[ed] for a significantly different purpose" than the purpose for which he was invited to enter. *Id.* at 1104. The owner or possessor of land "has the right to make an invitation as broad or as limited as he sees fit." *Id.* A court "will not expand whatever limits an owner chooses to impose on an invitee[.]" *Id.*

In this case, there is no conflicting evidence regarding the scope of Plaintiff's invitation. Plaintiff was trespassing at the time of her injury. When Plaintiff entered Mount Snow, paid for a lift ticket, rode the chair lift, and hiked the open trails, she was within the scope of her invitation. The scope of that invitation, however, did not extend to the Sundance lift, which had a sign stating, "! DANGER ! This lift could start at any time[.] KEEP OUT[.]" (Doc. 141-3 ¶ 10.) Plaintiff stepped over that sign onto the skier exit ramp and then climbed the metal stairs to the landing above. (*Id.* ¶ 12.) Plaintiff acknowledged she understood the need to follow all signs while visiting Mount Snow. (*Id.* ¶ 6.) When Plaintiff crossed the sign instructing guests to keep out, she exceeded the scope of her invitation.[3] *See, e.g.*, *Handy v. Nejam*, 111 So. 3d 610, 613 (Miss. 2013)

---

[3] Plaintiff cites 62 Am. Jur. 2nd, Premises Liability, § 100 for the proposition that "a lawful visitor is ordinarily entitled to use all areas of a defendant's premises, unless the latter 'exercises reasonable care to apprise him that the area of invitation is more narrowly restricted,' or the nature of the area itself suggests it is off limits." (Doc. 141 at 6.) The court was unable to locate the quoted text in Section 100 or any section of the cited treatise. Section 100 does state that a lawful visitor "may, during the stay, become a trespasser if [they] enter[] upon a portion of the premises where [their] presence is not reasonably foreseen." The Comment to Section 100 explains that the spatial

(when "a sign clearly prohibiting guests from entering the pool area without being accompanied by a resident of the apartment complex was posted by the entrance of the pool the day of the incident[,] . . . the boys lost their status as invitees and became trespassers when they entered the pool area" unaccompanied by a resident).

Plaintiff argues "this dispute centers around the adequacy of the Sign to convey the message that the Lift was beyond the scope of invitation for visitors" because "the way the Sign was worded suggested the *only* reason that visitors were told to stay off the Lift was due to the danger that its machinery 'could start at any time.'"  (Doc. 141 at 7–8 (emphasis in original).) While Plaintiff may disagree with the *rationale* the sign contained for limiting the scope of the invitation, she cannot dispute that the sign instructed her to stay away from the Lift.  *See Hillier*, 458 A.2d at 557 (holding that, even if plaintiff "may have been lulled into an unfortunate sense of security by [a defendant's] alleged statement that the dog would not bite him," the "plain uncontradicted facts are that he went on the defendants' land for an unauthorized purpose" and "[a]ny sense of security he may have felt did no more than lead him to believe he could do something he had no right to do in the first place without danger to his person, that he could exceed the scope of the invitation and trespass with impunity.").  A sign including the language "KEEP OUT" cannot reasonably be interpreted as one that "would [lead Plaintiff] to believe" that the ski lift was "held open to [her]" or give Plaintiff "the reason to believe that [her] presence is desired." Restatement (Second) of Torts § 332 cmt. l; *see also id.* ("[A] customer in a department store . . . is an invitee in any of the aisles unless [they are] notified, by a sign or otherwise, that a particular aisle is closed to customers.").  Plaintiff has not provided, nor can this court find, any example of

---

scope of invitation is limited to "the part of the land upon which the possessor gives the visitor reason to believe that [their] presence is desired for the purpose for which the visitor has come."  This authority supports the court's interpretation that Plaintiff became a trespasser by entering an area marked with a sign instructing guests to "KEEP OUT" because such a sign does not give a visitor reason to believe that their "presence is desired" in that area.

a case when an invitee went beyond a sign that said "danger" or "keep out" and was not considered a trespasser in that area. *See, e.g., Handy*, 111 So. at 613; *Smither v. Texas Utilities Elec. Co.*, 824 S.W.2d 693, 696 (Tex. App. 1992) ("The fence and the 'no trespassing' signs would have the effect of ensuring that anyone entering the premises would be a trespasser and not a licensee. The additional signs warning of the dangerous waters were not required as to a trespasser but do show a conscious concern of [the defendant] for the safety even of trespassers."), *writ dismissed by agreement* (May 20, 1992).

Plaintiff next argues that Defendants could not limit the scope of her invitation because the ski lift was located on public land. This argument also fails. Defendants run the Mount Snow ski resort under a Special Use Permit issued by the United States Forest Service. (Doc. 141-10.) Although Defendants operate a ski resort on the land, it is public land. (*Id.*) The lift's location on public land, however, does not require Defendants to allow visitors onto the lift infrastructure. A person can be a trespasser on private equipment located on public land. For example, when a plaintiff who was lawfully visiting a public park climbed a power company's tower located in that park, the plaintiff became a trespasser. *Huffman v. Appalachian Power Co.*, 415 S.E.2d 145, 147–48 (W. Va. 1991). In *Huffman*, the plaintiff was in a public park near a picnic pavilion, picnic tables, and playground when he ignored signs reading "Danger, High Voltage, Keep Off" and climbed the tower. *Id.* at 148. The defendant owned the electrical tower located in the public park. *Id.* at 150. "Regardless of his status in the park, when the Plaintiff left the ground and began climbing the tower, he exceeded the scope of any invitation or license he may have had to be upon the park grounds and became a trespasser as to" the defendant. *Id.*

Plaintiff further contends that "this Court should conclude that Ms. Keresztessy was not a trespasser" because the Vermont Passenger Tramway Rules "may be viewed as specifying one

aspect of the duty owed by Mount Snow under the common law or as giving rise to an additional duty to keep members of the public like Ms. Keresztessy away from the Lift terminal and adopt precautionary measures for that purpose." (Doc. 141 at 9.) The American National Standards Institute ("ANSI") Passenger Ropeways Safety Standards have been adopted as part of the Vermont Passenger Tramway Rules. 24-060-001 Vt. Code R. § 1.04 (2025). The relevant section states that "[p]rovisions shall be made to keep the public away from the machinery" not housed in a machine room. ANSI B77.1 § 4.1.2.7.1. Neither the ANSI nor Vermont's Passenger Tramway Rule define "machinery" or "machine." The court is skeptical that the ski lift qualifies as "machinery" away from which Defendants must keep the public because to read the regulation that way would prevent the use of any ski lift by any member of the public at any time. Even if the court did read the Rule as imposing a duty on Defendants, however, Defendants *did* take provisions to keep the public away from the Lift—by hanging a rope barrier and a sign containing the words "DANGER" and "KEEP OUT." As discussed above, these provisions converted Plaintiff from an invitee to a trespasser when she stepped over the rope and the sign to access the Lift.

Plaintiff also asserts that "[t]he first (chronologically) alleged negligence occurred when Mount Snow failed to take reasonable steps to keep Ms. Keresztessy away from the Lift considering that Mount Snow knew the sign it was using was routinely ignored by other visitors." (Doc. 141 at 11.) This analysis addresses whether Defendants owed trespassers a duty due to a state of "constant trespass," not whether Ms. Keresztessy was trespassing when she entered the lift. The "constant trespass" doctrine will be discussed in the following section.

Similarly, the ANSI provision Plaintiff cites for general and personnel safety does not apply because it is specific to safety related to the operation and maintenance of the lifts. This section

notes that operation and maintenance of the lifts "can be dangerous to personnel performing these tasks" and that procedures to reduce risk are necessary for the personnel doing the work and "for the protection of the public." ANSI B77.1 § 4.3.1. This section relates to the performing of tasks and functions necessary for the operation and maintenance of the ski lifts. The clear purpose of this section is to protect the public while those tasks and functions are performed. This section of the ANSI B77.1 does not relate to general public safety but to public safety as a result of dangerous tasks performed for the operation and maintenance of the ski lifts. Given that the Sundance lift was not operational on the day of Plaintiff's injury, this ANSI provision is not applicable.

In sum, Plaintiff was a lawful entrant on the public land, but she became a trespasser onto Defendants' equipment on the land as a matter of law when she entered the Sundance lift, passing the sign instructing visitors to keep out. As a result, Defendants owed her no duty of care unless the circumstances of Plaintiff's trespass fall into one of the exceptions recognized in the common law.

## B. Whether Visitors Constantly Trespassed on Defendants' Ski Lifts Must Be Decided By the Jury.

The Restatement (Second) of Torts describes limited exceptions to the general rule that a possessor of land owes no duty to trespassers for conditions on the land. "When dealing with gaps in Vermont's common law, the Vermont Supreme Court frequently relies on the Restatement (Second) of Torts . . . ."[4] *Addison Cent. Sch. Dist. v. Monsanto Co.*, 2024 WL 4348194 at *6 (D.

---

[4] The Restatement (Third) of Torts "recognizes the evolution away from" the historical system of imposing duties based on the status of the land entrant and therefore "rejects the status-based duty rules and adopts a unitary duty of reasonable care to entrants on the land." Restatement (Third) of Torts: Liab. for Physical and Emotional Harm ch. 9, Scope Note (A.L.I. 2012). Plaintiff encourages the court to apply the Restatement (Third) to this case because "there is also reason to think that, if given an opportunity to do so, the Vermont Supreme Court would jettison [the status-based] approach and instead adopt" the approach of the Restatement (Third). (Doc. 141 at 21.) The Vermont Supreme Court, however, has so far declined to determine whether the Restatement (Third) of Torts applies to premises liability cases. *See LeClair v. LeClair*, 2017 VT 34, ¶ 12 n.6, 204 Vt. 422, 169 A.3d 743. The court need not predict whether the Vermont Supreme Court would apply the Restatement (Third) because the outcome of this Motion would not change. *See* Restatement (Third) ch. 9, Scope Note (describing its adoption of "a unitary duty of

Vt. 2024). The relevant exception in this case relates to the concept of constant trespass. An owner or occupier of land sometimes owes a duty to trespassers when people constantly trespass in an area with highly dangerous artificial conditions:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if (a) the condition (i) is one which the possessor has created or maintains and (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335 (Am. L. Inst., 1965).

### i.    Possessor's Knowledge of Constant Trespass

Under Section 335, a possessor of land may owe a duty to trespassers when the possessor knows of constant trespass (known in some jurisdictions as "constant intrusion"). The possessor of land must have "facts within the knowledge of the possessor that 'trespassers constantly intrude[d] upon a limited area of the land[]'" for knowledge of constant trespass to be imputed to the possessor. *Maffucci v. Royal Park Ltd. P'ship.*, 707 A.2d 15, 21 (Conn. 1998).

In Vermont, constant intrusion has been found where the intrusion is "almost daily[.]" *Dent v. Bellows Falls & S.R. St. Ry. Co.*, 116 A. 83, 86 (Vt. 1922). The Seventh Circuit has found as few as five diving accidents over nine years along with an unknown number of citations issued to people who ignored the "No Swimming in Devil's Kitchen Lake" sign sufficient to establish constant trespass. *Davis v. United States*, 716 F.2d 418, 422 (7th Cir. 1983). In *Colon v. Metro-North Commuter Railroad Company*, the plaintiff raised a "triable issue regarding [the] defendants' knowledge of constant intrusion" because the defendants were aware of injuries and deaths over

---

reasonable care to entrants on the land" except those "whose presence is antithetical to the rights of the land possessor or owner.").

several years at the defendant's electrical towers as well as graffiti as high as twenty-five feet up one of the towers. 242 F. Supp. 3d 65, 74 (D. Conn. 2017).

Alternatively, courts have found there is no constant intrusion when the intrusions are limited to one or two total incidents of trespass. *See Colosimo v. Gateway Community Church*, 424 P.3d 866, 877 (Utah 2018) (two instances of known trespassers in over a decade leading up to plaintiff's accident was not sufficient to show constant trespass); *Eichelberg v. National R.R. Passenger Corp.*, 57 F.3d 1179, 1184 (2d Cir. 1995) (one previous collision between an Amtrak train and trespasser along with evidence that Amtrak "was aware that people occasionally fished in the area" was not sufficient to show "reasonably regular and predictable" trespass).

In the present case, the evidence regarding the number of previous trespassers and the timing of the trespassing is somewhat unclear, but, viewing the evidence in the light most favorable to Plaintiff, as the court must, the court finds sufficient evidence from which a reasonable jury could find Defendants had actual or constructive knowledge of constant trespass onto Defendants' ski lifts. Defendants provided two charts that, by their count, show between twenty-five and thirty-four instances of employees witnessing trespass onto closed lifts over forty-eight years. (*See* Doc. 140-2 at 12–13, ¶ 25; Doc. 143-1 at 21–22, ¶ 25.) The precise timing of the trespass incidents, however, is not clear from the record. As an initial observation, although some of the employees describe only one or two experiences of seeing trespassers on closed ski lifts before Plaintiff's fall despite having worked for Mount Snow for lengthy periods of time, there is no indication as to whether those prior episodes occurred forty years ago or whether they all occurred more recently. This is particularly important given Plaintiff's expert's testimony that there has been an increase in the number of trespass incidents at closed lifts in summer across the ski industry as resorts expand their operations to include summer activities. (*See* Doc. 141-23 at 3, ¶ 6.) Certainly, if

each of these episodes occurred within the year preceding Plaintiff's fall, this would be much stronger evidence of constant trespass than if they each occurred more than thirty years ago.

Although Defendants describe the timeframe for the prior instances of trespass to be between 1976 and 2024, many of the employees listed appear to have worked there for shorter periods, closer in time to Plaintiff's fall. Several of these employees testified to seeing visitors trespassing on non-operational lifts. Andrew Lampron, who began working for Defendants in late 2014, testified he observed such trespass approximately one to two times per year over the course of his employment.[5] (Doc. 141-17 at 3–5, 11:9–13:14; *id.* at 6, 37:18–38:13.) Sabrina Lomans, who worked for Defendants from winter 2010 through November 2022, likewise testified to ten incidents of lift trespass over nine years in summer operations and three to five instances over four seasons on bike patrol, even though she could not recall the precise dates of each incident. (Doc. 141-18 at 3, 29:18–30:4; *id.* at 5–6, 38:4–39:1; *id.* at 8–9, 44:2–45:2.) Kevin Harrington, who began work as Mountain Manager in 2018, testified that he observed trespass onto closed lifts three to four times. (Doc. 141-16 at 3, 13:14–18; *id.* at 7–8, 131:5–132:22.) Michael Porter, who worked on summer patrol from 2018—2024, similarly testified to observing trespass more than once during his employment, even though he could not identify the exact dates of those incidents. (Doc. 141-15 at 10, 137:14–20.)

---

[5] Defendants contend that Mr. Lampron "later corrected" his testimony to three times over ten years. (Doc. 141-3 at 19, n.1.) Defendants cite the deposition testimony of Michael B. Porter, who testified that he spoke to Mr. Lampron and "he, over the span of ten years, remembers three times when guests accessed the deck of specific lifts . . . ." (Doc. 140-20 at 3, 133:11–17.) Defendants have made no argument regarding whether Mr. Lampron's statement is admissible when introduced through Mr. Porter's testimony. Regardless of the statement's admissibility, the court on summary judgment must consider conflicting evidence and resolve all ambiguities in favor of Plaintiff as the nonmoving party. *See Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 515 (2d Cir. 2023). For this reason, the court considers Mr. Lampron's deposition testimony—containing a higher estimate of incidents of trespass than Mr. Porter's testimony—on summary judgment.

Although the testimony does not allow the court to assign each incident to a specific year or to definitively determine how many incidents occurred before September 2020, the record evidence—viewed as a whole and in the light most favorable to Plaintiff—could be interpreted to show repeated observations of lift trespass by multiple employees across overlapping roles and seasons in the years immediately preceding Plaintiff's fall. *See, e.g., Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 147 (2d Cir. 2024) (citation modified) (emphasizing that court on summary judgment "may not properly consider the record in piecemeal fashion" and must "review the record as a whole"). Taken together, this evidence goes beyond one or two isolated incidents and distinguishes this case from those in which the evidence was not sufficient to show constant trespass. A reasonable jury could conclude that enough trespass onto closed lifts occurred prior to September 2020 to put Defendants on notice of a pattern of intrusion consistent with constant trespass. Viewing the evidence in the light most favorable to Plaintiff, the court finds a triable issue of fact exists regarding Defendants' knowledge of constant trespass.

    **ii.**    **Limited Area**

In addition to having knowledge of constant trespass, individuals who own or possess land must also have knowledge that the constant trespass occurs "upon a limited area of the land" before being subjected to liability under Section 335. *Maffucci*, 707 A.2d at 21. In *Maffucci*, the plaintiff tried to steal copper from switchgear cabinets in an apparently abandoned building and, in the process, was injured due to "contact with an energized circuit in the switchgear." *Id.* at 19. There was a record of trespass into other areas of the property, including the building and courtyard where the switchgear cabinets were located. *Id.* at 23. The court noted, however, that "[w]hen a trespasser is harmed as a result of [their] entrance into or upon a structure constituting an 'artificial condition on the land,' the limited area to which the court must look is the structure creating the

condition." *Id.* at 21–22. The defendant's knowledge of trespassers generally into the building and courtyard did not provide actual knowledge of constant trespass into the specific area of the switchgear cabinets. *Id.*; *see also Cooper v. Unimin Corp.*, 639 F. Supp. 1208, 1213 (D. Idaho 1986) (constant trespass must be on a "limited area" such that knowledge of constant trespass to other areas of the defendant's sandpit was not sufficient to show constant trespass in the area of the plaintiff's accident); *Foster v. Alabama Power Co.*, 395 So. 2d 27, 31 (Ala. 1981) (affirming summary judgment when defendant did not have reason to know that people might climb a tower to get a better view just because there were people in the area near the tower); *Ryckeley v. Georgia Power Co.*, 176 S.E.2d 493, 497 (Ga. Ct. App. 1970) (affirming directed verdict for the defendant when defendant knew of presence of people near electric towers but there was no evidence that the defendant had any knowledge that people were climbing the towers).

Trespass onto similar structures in the area owned by Defendants can be considered, however. In *Colon*, the plaintiff was injured by an electric shock when he climbed an electrical tower owned by the defendants. 242 F. Supp. 3d 65, 68 (D. Conn. 2017). The plaintiff provided evidence sufficient to raise "a triable issue . . . of constant intrusion on the structure creating the artificial condition—Tower #1043 *and other catenary towers in the area*." *Id.* at 73–74. (emphasis added). The defendants were aware that "at least one tower in that area ha[d] graffiti up to a height of 25 feet . . . " *Id.* at 74. Paired with "catenary injuries and death over the years[,]" the evidence of graffiti was sufficient for a jury to reasonably find there was "constant intrusion up Tower #1043 and the surrounding towers." *Id.*

In the present case, the record contains sufficient evidence to create a triable issue of fact regarding whether Defendants had knowledge of constant trespass onto a limited area: the Sundance lift and other ski lifts. Defendants argue evidence of trespass onto the skier exit ramp is

distinguishable from Plaintiff's trespass onto the metal landing located above the skier exit ramp. (Doc. 143 at 7–8.) According to Defendants, the relevant "limited area" for the "constant trespass" analysis is "the at-height location" of the metal catwalk, "not the base below or nearby area." *Id.* The cases Defendants cite, however, do not support Defendants' argument. Defendants' cases correctly focus on whether the land possessors had notice of trespass on the *structures or type of structures* at issue—not notice that people reached a particular height once on the structures. (*See* Doc. 140 at 15); *see also Colon v. Metro-North Commuter R.R. Co.*, No. 3:13-cv-00325 (JAM), 2017 WL 4570293, at *5 (D. Conn. Oct. 13, 2017) ("[T]here was no evidence to suggest that children routinely climbed catenary towers, much less that any child climbed to a height to be in dangerous proximity to any electrical wires and that defendants knew or had reason to know of such activity by children . . . ."; *Henderson v. United States*, 846 F.2d 1233, 1235 (9th Cir. 1988) (upholding finding of no duty when there was no evidence in the record of thieves climbing power poles to steal copper wires before the plaintiff's accident); *Foster v. Alabama Power Co.*, 395 So. 2d 27, 31 (Ala. 1981) (affirming summary judgment for defendants when, "while there was at least a scintilla of evidence that the Power Company might have had reason to know that people were in the area and might be near the tower, there was no evidence from which a factfinder could infer that the Power Company had any reason to know that people might be climbing the tower."); *Bennett v. Pub. Serv. Co. of New Hampshire*, 542 F.2d 92, 97 (1st Cir. 1976) (emphasis added) (dismissing complaint because record lacked evidence that the defendant "had actual knowledge of people coming within dangerous proximity to the wires meaning not merely the presence of people in the area on the ground, but *people either climbing the pole or otherwise placing themselves in a position near the wires* so as to endanger their safety."); *Miller v. Gen. Motors Corp.*, 207 Ill. App. 3d 148, 159–60, 565 N.E.2d 687, 694 (1990) (reversing denial of motion for

judgment as a matter of law because the record contained only "evidence that showed occasional trespassers in the general vicinity of the pumphouse," not evidence that any trespassers prior to the plaintiff had climbed a nine-foot wall and reached a second-story balcony). Unlike the cases cited by Defendants, the record in this case does contain evidence that Defendants had notice that visitors trespassed on the structures at issue in this case—the ski lifts.

Defendants' argument that the ski lift's exit ramp is a different structure from the "catwalk" connected to the exit ramp does not warrant summary judgment. Unlike the structures at issue in cases cited by Defendants, no barrier or obstacle separates the exit ramp from the catwalk or discourages or prevents an average, able-bodied person from climbing the stairs connecting the exit ramp to the catwalk (as Plaintiff and several companions readily did). (*See* Doc. 140 at 22.) A reasonable jury could conclude that known trespasses onto the skier exit ramp put Defendants on notice of trespass onto the entire ski lift structure. Because a reasonable jury could find for either Plaintiff or Defendants on this issue, there remains a genuine dispute of material fact that the court cannot resolve on summary judgment.

### iii.     Nature of the Artificial Condition on the Land[6]

Section 335 also requires the danger "is of such a nature that" the possessor of land would anticipate that trespassers would not discover the danger. Restatement (Second) of Torts § 335 (Am. L. Inst., 1965). Defendants point to case law stating that heights, like fire and water, are open and obvious conditions. (Doc. 140 at 21) (citing *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996)). Plaintiff argues Defendants' knowledge of and failure to fix a missing

---

[6] In their filings, Defendants do not appear to dispute several elements of Section 335: that Plaintiff experienced bodily harm caused by an artificial condition on the land, (Doc. 114 at 5, ¶ 43; Doc. 115 at 5, ¶ 43); that Defendants created or maintain the artificial structure, (Doc. 143-1 at 45–47, ¶¶ 69–71); and that Defendants are aware that the artificial condition is likely to cause death or serious bodily harm to trespassers, (Doc. 143 at 8–11). To the extent that Defendants dispute these elements, the court finds that the record contains sufficient evidence to create a disputed issue of material fact for each element.

18

guardrail on the Lift caused the risk of harm and that the lack of a guardrail at that section of the upper landing of the lift was not an obvious danger. (Doc. 141 at 20–21.)

"Although duty is primarily a question of law, there is still a role for a jury in determining the obviousness of the condition at issue." *Hawley v. Hannaford Bros. Co. LLC*, 2018 WL 3647202 at *8 (D. Vt. 2018) (citation modified); *see also Wisdom v. TJX Companies, Inc.*, 410 F. Supp. 2d 336, 346 (D. Vt. 2006); *Spooner v. Todd Transportation Co.*, No. 2:15-CV-00191, 2018 WL 1281788, at *7 (D. Vt. Mar. 9, 2018) (collecting cases in which courts concluded that the obviousness of the danger is a question for the trier of fact). In this case, a genuine issue of material fact exists. Defendants do not dispute that they "identified the missing guardrail where Ms. Keresztessy fell as a hazard" and "document[ed] [it as] 'hazard: portal access railing improvement,' which Mr. Lampron acknowledged was intended to point out the unprotected sides and edge of the platform Ms. Keresztessy fell from." (Doc. 143-1 at 46, ¶ 70.) They also do not dispute that they knew of the hazard several months before Plaintiff's fall and, at the time of the fall, did not have a plan to fix it. (*Id.* at 46–47, ¶ 71.) Defendants characterize this evidence as "immaterial because they relate to measures aimed toward employees, not guests." (*Id.*) The question of whether the missing guardrail was an "open and obvious" danger, however, is legally distinct from the question of whether Mount Snow could reasonably anticipate "that a guest would access the catwalk of Sundance Lift." (*Id.*)

As discussed above, a reasonable jury could find Defendants had reason to know that trespassers would access the catwalk with a missing railing. A reasonable juror could rely on Defendants' recognition and documentation of the missing guardrail as a "hazard" for employees and their failure to fix it for several months to conclude that the danger was not so "open and obvious" that Defendants could not anticipate that a reasonable person—whether an employee or

19

a trespasser—would fail to notice and avoid it. For this reason, a jury must resolve the question of whether the missing guardrail on the catwalk was an "open and obvious" danger.

### iv.    Reasonable Care

Section 335 requires the possessor of land "to exercise reasonable care to warn such trespassers *of the condition and the risk involved*." Restatement (Second) of Torts § 335 (Am. L. Inst., 1965) (emphasis added). The question of "reasonable care" is generally reserved for a finder of fact. *Hawley*, 2018 WL 3647202, at *8 (citing *Spooner*, 2018 WL 1281788, at *7).

Defendants argue the sign at the skier exit ramp sufficiently warned of danger and Plaintiff "decided to make her own assessment of the risks associated with accessing the Lift." (Doc. 140 at 3.) Plaintiff argues the phrase "lift could start at any time" qualified the "keep out" instruction on the sign by suggesting "the *only* reason that visitors were told to stay off the Lift was due to the danger that its machinery 'could start at any time.'" (Doc. 141 at 7–8.)

Whether Defendants exercised reasonable care to warn trespassers of the specific risk of danger at the ski lifts is an issue for a jury. The record contains sufficient evidence to create a triable issue of fact regarding whether Defendants exercised reasonable care to warn trespassers of dangers associated with the Sundance lift. A jury could reasonably find that Defendants' sign warned only of the danger of the lift starting, which was not the danger that caused Plaintiff's injury. Section 335 explicitly requires warning of "the risk involved." Restatement (Second) of Torts § 335 (Am. L. Inst., 1965). In this case, the sign warned of a specific risk, which was not the danger that caused Plaintiff's injury. A factual question regarding reasonable care remains that a finder of fact must resolve.

## Conclusion

Reasonable minds can come to different conclusions on each element of Section 335 such that the court cannot grant summary judgment. Defendants' Motion for Summary Judgment is DENIED.

DATED at Rutland, in the District of Vermont, this 13th day of January 2026.

Mary Kay Lanthier
United States District Judge