U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 NOV 25 PM 4:33

CLERK

BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

FAITH KERESZTESSY,
Plaintiff,

v.

MOUNT SNOW, LTD.; VAIL RESORTS, INC.; THE VAIL CORPORATION; PEAK RESORTS, INC.; and VR NE HOLDINGS, LLC,
Defendants.

Case No. 22-cv-00204

**ORDER ON PLAINTIFF AND DEFENDANTS' MOTIONS REGARDING EXPERTS**
(Docs. 170, 171, 172, 173, 174, and 175)

Plaintiff Faith Keresztessy brought this negligence action against Mount Snow, Ltd., Vail Resorts, Inc., the Vail Corporation, Peak Resorts, Inc., and VR NE Holdings, LLC (collectively "Defendants") to recover for serious injuries she sustained following her fall from a nonoperational chairlift maintained by Mount Snow ski resort. (Doc. 112.) Plaintiff and Defendant each seek to introduce expert testimony at trial. Plaintiff filed two motions in limine, each concerning different aspects of one of Defendants' proffered expert's testimony. (Doc. 170, 171.) Defendants filed three motions in limine, each seeking to either limit or exclude Plaintiff's proffered experts' testimony. (Doc. 172, 173, 174.) Additionally, Defendants filed a motion in limine to preclude evidence and arguments regarding Occupational Safety and Health Administration ("OSHA") regulations, employee fall protection policies, Mount Snow's United States Forest Service ("USFS") Special Use Permit, and American National Standards Institute ("ANSI") standards. (Doc. 175.)

## Factual Background

On September 20, 2020, Plaintiff and her friends visited Mount Snow, a ski resort in West Dover, Vermont. (Doc. 112 at 3, ¶ 26.) Plaintiff and her friends purchased a lift ticket and rode on one of the resort's chairlifts. (*Id.*) After walking down the Mount Snow trails, Plaintiff and her friends approached a nonoperational chairlift. (*Id.* at 4, ¶ 28). Plaintiff stepped over a rope holding a sign stating "! DANGER ! This lift could start at any time[.] KEEP OUT" a total of three times. (Doc. 141-3 at 7, ¶ 12.) The third time Plaintiff passed the sign, she "walked onto the skier exit ramp of the . . . lift, stepped over the low-hanging rope, and climbed the metal stairs to the first metal landing" above the skier exit ramp. (Doc. 112 at 5, ¶ 40.) Plaintiff climbed the lift to take photographs, (Doc. 141-3 at 7, ¶ 12), and while taking photographs on the metal landing, she fell backwards through an access point that "had no railing or protective barrier and landed on the platform below[,]" (Doc. 112 at 5, ¶ 41). Plaintiff suffered severe injuries as a result of her fall, including "T11-T12 vertebral fractures and paraplegia with related complications." (*Id.* at 5, ¶ 42.)

Defendants filed a Motion for Summary Judgment on Plaintiff's claims, arguing that Mount Snow owed plaintiff no duty, either because Plaintiff was a trespasser or because Plaintiff failed to avoid an open and obvious danger. (Doc. 140.) Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. (Doc. 141.) In her Response, Plaintiff argued that Mount Snow owed her a duty of care because she was a lawful visitor to Mount Snow and the sign at the chairlift was insufficient to suggest that accessing the chairlift was beyond the scope of her invitation. (*Id.* at 1–2, 7–8.) In the alternative, Plaintiff pointed to the ANSI safety standards adopted by the Vermont Passenger Tramway Rules, OSHA regulations, and Mount Snow and Vail Resort's internal employee fall protection policies as providing evidence of a duty of care with which Mount Snow did not comply. (*Id.* at 9–10.) Plaintiff also argued that Mount Snow had an

independent duty "to inspect the premises for hazards that posed a risk of injury to the public under its Special Use Agreement with the U.S. Forestry Service." (*Id.* at 14.)

In its Order denying Defendants' Motion for Summary Judgment, this court held that Plaintiff was a trespasser as a matter of law. (Doc. 157 at 7.) Though Plaintiff was an invitee when she "entered Mount Snow, paid for a lift ticket, rode the chair lift, and hiked the open trails," the scope of that invitation did not extend to the nonoperational chairlift, which had a sign stating, "'! DANGER ! This lift could start at any time[.] KEEP OUT[.]'" (*Id.* at 7 (quoting Doc. 141-3 at 5, ¶ 10.) By crossing that sign, the court held that Plaintiff "exceeded the scope of her invitation" and became a trespasser. (*Id.*) A land possessor generally owes no duty to a trespasser. (*Id.* at 11.) The court identified one limited exception to this general rule laid out in the Restatement (Second) of Torts, (*id.* at 11), which provides that:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if
>
> (a) the condition
>
> (i) is one which the possessor has created or maintains and
>
> (ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and
>
> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
>
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335 (A.L.I. 1965).

Plaintiff and Defendants seek to provide expert testimony to opine on issues related to the factors contained in Section 335 of the Restatement (Second) of Torts. Plaintiff and Defendants filed Motions in Limine seeking to limit or outright exclude the opposing party's proffered expert

testimony. Defendants also seek to exclude evidence and arguments that they argue would create confusion as to the relevant standard of care. The court will address each of Plaintiff and Defendants' Motions in Limine below.

## Conclusions of Law and Analysis

### I. Legal Standard

District courts are "accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). As such, courts of appeal review district court's determinations regarding the admissibility of evidence solely for an abuse of discretion. *Id.*

Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed R. Evid. 401. Relevant evidence, however, may be excluded by a court if its "probative value is substantially outweighed" by certain dangers, including "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In determining the admissibility of expert testimony, courts must first determine whether the proffered testimony is relevant. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). The court must then evaluate whether the testimony rests on a "reliable foundation" by considering the factors laid out by Rule 702. *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Per Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The purpose of this inquiry is to uncover if an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The *Daubert* test assists courts in determining whether expert testimony has a reliable basis. Factors relevant to the *Daubert* analysis include (1) whether a theory or technique has been tested, (2) whether a technique or theory has been subjected to peer review and publication, (3) what the known or potential rate of error is for a particular technique, and (4) whether the theory or technique is subject to "general acceptance" within the relevant scientific community. *Daubert*, 509 U.S. at 593–94. "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141.

Experts may testify as to ordinary practices in their particular industry based on their experience. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132–34 (2d Cir. 2006) (concluding that a district court did not abuse its discretion by permitting an expert witness to testify as to "custom and practice" based on his experience in the insurance industry as an underwriter and a broker); *Moffitt v. Icynene, Inc.*, 407 F. Supp. 2d 591, 606 (D. Vt. 2005) ("Testimony regarding the ordinary practices of those engaged in a particular business or

concerning other trade customs is admissible to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." (citation modified)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Rutledge v. Walgreen Co.*, 182 F.4th 168, 184 (2d Cir. 2026) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (internal quotation marks omitted). As such, in order for testimony by an expert qualified by his experience to be admissible, "such an expert must show how his or her experience . . . led to his conclusion or provided a basis for his opinion." *SR Int'l Bus. Ins. Co.*, 467 F.3d at 132 (internal quotation marks omitted).

Expert testimony is generally admissible if "it is helpful to the trier of fact." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (citing Fed. R. Evid. 702). There are, however, several important limitations on expert testimony. Expert testimony cannot "undertake[] to tell the jury what result to reach," as such testimony "attempts to substitute the expert's judgment for the jury's." *Id.* "[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admiss[i]ble." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). In reviewing the use of expert testimony, the court evaluates whether such testimony will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (citation modified). Experts also may not testify as to "lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Zhong*, 26 F.4th 536, 555 (2d Cir. 2022) (citation modified).

## II. Inadmissibility of Evidence and Arguments Related to OSHA Regulations, Employee Fall Protection Plans, ANSI Standards and Mount Snow's USFS Special Use Permit

Defendants move to preclude evidence and argument regarding OSHA regulations, Mount Snow and Vail Resorts' employee fall protection policies, ANSI standards, and Mount Snow's USFS Special Use Permit, arguing that such evidence is "irrelevant yet highly prejudicial." (Doc. 175 at 1.) Defendants assert that evidence and arguments on these topics "involve inapplicable standards and duties." (*Id.*) Defendants further assert "any slight relevance would be substantially outweighed by the risk of unfair prejudice to Defendants, jury confusion of the issues, and a waste of time." (*Id.*) As such, Defendants ask the court to preclude discussion of these topics pursuant to Rules 401 and 403. (*Id.*) For the reasons stated below, the court agrees with Defendants and holds that evidence and arguments on these topics must be excluded.

### A. Evidence and Arguments About OSHA Regulations Are Excluded as Irrelevant Pursuant to Rule 401

Plaintiff seeks to introduce evidence and arguments regarding OSHA regulations. (*See* Doc. 141 at 20; Doc. 172-2 at 28–30; Doc. 173-1 at 4; Doc. 174-2 at 28.) Such evidence is irrelevant and thus subject to exclusion under Rule 401.

Defendants argue that OSHA regulations only apply to employees rather than to trespassing visitors and are thus irrelevant. (Doc. 175 at 3.) In her Opposition to Defendants' Motion in Limine, Plaintiff relies on *Ball v. Melsur Corp.*, 633 A.2d 705 (Vt. 1993), *abrogated by Demag v. Better Power Equip., Inc.*, 2014 VT 78, 197 Vt. 176, 102 A.3d 1101, for the proposition that OSHA and Vermont Occupational Safety and Health Administration ("VOSHA") regulations are admissible as evidence of the standard of care. (Doc. 181 at 3.) Plaintiff's reliance on this case is misplaced. First, in *Ball*, the plaintiff was a business invitee, not a trespasser. 633 A.2d at 711. This alone suggests that *Ball* does not apply here. Ms. Keresztessy started out as a business invitee, but, once she crossed the rope and walked onto the nonoperational lift, she became a trespasser subject to a lesser duty of care. The OSHA regulations Plaintiff's experts cite to are specifically

related to guarding unprotected edges; nothing about these regulations relates to Mount Snow's duty to Plaintiff while she was considered an invitee. It is true that in *Ball*, the Vermont Supreme Court held that OSHA/VOSHA regulations "are properly admissible as evidence of a standard of care." *Id.* at 712 (citing *Rolick v. Collins Pine Co.*, 975 F.2d 1009, 1013 (3d Cir. 1992)). Here, however, the court has already supplied the relevant duty of care, which is a duty to warn, as articulated in the Restatement (Second) of Torts § 335. (Doc. 157 at 11–12.) None of the OSHA regulations cited discuss the standard of care for warnings.

Evidence and arguments related to OSHA regulations are irrelevant because such regulations supply an inapplicable standard of care and thus are of no consequence in determining this action. The court therefore holds that evidence and arguments related to OSHA regulations must be excluded under Rule 401. Even if the regulations were relevant, whatever minimal relevance they provide would be substantially outweighed by the risk of confusing the issues and misleading the jury as to the applicable standard of care.

**B. Evidence and Arguments About Employee Fall Protection Plans Are Excluded Pursuant to Rule 403**

Plaintiff seeks to introduce evidence and arguments about Mount Snow's 2016 Fall Protection Plan, (*see* Doc 181-2), and Vail Resorts' 2018 Fall Protection and Rescue Program, (*see* Doc. 181-3). Such evidence must be excluded as irrelevant under Rule 401 or under Rule 403, as introducing evidence of the fall protection plans runs the risk of confusing the issues or misleading the jury.

Plaintiff argues the fall protection policies are relevant and admissible because they are "powerful evidence" of Defendant's knowledge of the danger posed by the unprotected edge from which Ms. Keresztessy fell; Defendants' knowledge that "a guardrail system or other fall protection system was an appropriate or necessary safety measure" on the lift; the "feasibility" of

installing fall protection measures around the exposed edge; and "whether Defendants' failure to maintain the required guardrail system or other fall protection system on the . . . lift constituted a failure to exercise reasonable care." (Doc. 181 at 6.) Plaintiff cites to cases in which courts have held that a defendant's internal policies may be used as evidence of the relevant standard of care. (*See id.*)

To the extent that Plaintiff wishes to introduce the fall protection plans as evidence of the standard of care, such evidence and arguments must be excluded as irrelevant under Rule 401. The court has already supplied the applicable duty of care, which is, at most, a duty to warn rather than a duty to guard against hazards. Whether it was feasible for Mount Snow to install fall protection measures is also irrelevant, as Mount Snow's duty in this case, if any, was merely to warn rather than to install protective measures.

Mount Snow's knowledge of the risk of falling from an unprotected edge is relevant. One of the factors under Section 335 of the Restatement (Second) of Torts is that the artificial condition must be, to the land possessor's knowledge, "likely to cause death or serious bodily harm." Restatement (Second) of Torts § 335 (AL.I. 1965). It is clear, however, that there is a risk of falling from an elevated edge that is unprotected. A jury is able to understand this without the need for expert testimony. Therefore, the probative value of the fall protection plans is very low. The minimal probative value of the fall protection plans is substantially outweighed by the danger of misleading the jury into considering other aspects of the fall protection plan outside of this limited purpose. As such, evidence and arguments related to the fall protection plans are properly excluded pursuant to Rule 403.

**C. Evidence and Arguments About ANSI Standards Are Excluded as Irrelevant Pursuant to Rule 401**

Plaintiff and Defendants each seek to provide evidence and arguments related to ANSI standards. The court holds that evidence and arguments regarding ANSI standards must be excluded under Rule 401, as the ANSI standards are plainly irrelevant.

Plaintiff alleges that Mount Snow violated ANSI provisions that supply Mount Snow with a duty of care. Plaintiff has previously pointed to a section stating that "[p]rovisions shall be made to keep the public away from the machinery" that is not housed in a machine room. (*See* Doc. 141 at 9; *see also* ANSI B77.1 § 4.1.2.7.1.) The court expressed skepticism that ski lifts qualify as this type of machinery, "because to read the regulation that way would prevent the use of any ski lift by any member of the public at any time[,]" and concluded that, even if this provision applied, Mount Snow did in fact comply with it by placing a sign and a rope barrier in the way of the lift. (Doc. 157 at 10.) Plaintiff's experts seek to testify as to the ANSI requirement that, on fixed grip aerial lifts, "all personnel shall practice good housekeeping, with particular emphasis on avoiding the development of any condition that might contribute to personal injury." (*See* Doc. 173-1 at 4; Doc. 174-2 at 21; *see also* ANSI B77.1 § 4.3.3.2.) Defendants assert that this provision is irrelevant because "it applies to keeping work areas clean and orderly to avoid injury, and there is no allegation Plaintiff was injured because a work area was not clean." (Doc. 175 at 8.)

Defendants' expert Mr. John Hammond also seeks to testify as to his interpretation of ANSI standards. Plaintiff asks the court to preclude Defendants' expert from testifying that, beyond signs prohibiting the entry of unauthorized persons to the motor and operator rooms, "[t]here are no additional mandated responsibilities placed on a ski area to close off a lift to guests[,]" such that the rope and sign over the nonoperational ski lift were "not required" and "would be considered an 'additional sign'" under ANSI. (Doc. 170 at 4 (quoting Doc. 170-7 at 8).) Plaintiff argues that Defendants' expert "should not be allowed to testify that the 'closure was not required' as it is

clearly contrary to the only safety regulation that is on point." (*Id.* at 5.) Defendants respond that Plaintiff's motion should be denied as moot because evidence and arguments regarding ANSI must be excluded as irrelevant. (Doc. 183 at 1.)

The court agrees with Defendants that evidence regarding ANSI must be excluded. The court already expressed doubt that ANSI B77.1 § 4.1.2.7.1 is applicable to this case because ski lifts likely do not qualify as "machinery." The court now holds definitively that ANSI B77.1 § 4.1.2.7.1 is in fact inapplicable here, as it is illogical to conclude that ski lifts qualify as "machinery," given that they are often used by the public. Additionally, even if ski lifts do qualify as machinery, Mount Snow already made provisions to prevent access by the public by putting up a sign and a rope closure.

ANSI B77.1 § 4.3.3.2 is inapplicable as well. The court agrees with Defendants' interpretation that this provision likely refers to keeping a clean and orderly workspace. As such, this provision is wholly inapplicable to this case, as there has not been any evidence or arguments regarding the cleanliness of the lift area.

The ANSI provisions that the parties and their proffered experts cite are irrelevant because these provisions simply do not apply to the facts at issue in this case. Such evidence and arguments therefore must be excluded as irrelevant pursuant to Rule 401. Furthermore, even if these provisions had some relevance, such relevance would be substantially outweighed by the risk of misleading the jury or confusing the issues by supplying an inapplicable duty of care. Plaintiff's Motion in Limine regarding Mr. Hammond's testimony about ANSI, (Doc. 170), is DENIED as moot.

### D. Evidence and Arguments About Mount Snow's USFS Special Use Permit Are Excluded Pursuant to Rules 401 and 403

Plaintiff seeks to introduce evidence and arguments regarding Mount Snow's USFS Special Use Permit. (*See* Doc. 141 at 5; Doc. 173-1 at 3–4; Doc. 174-2 at 19.) Such evidence and arguments are either irrelevant and must be excluded under Rule 401 or present needlessly cumulative evidence and must be excluded under Rule 403.

The Special Use Permit states in relevant part that the holder of the permit "has the responsibility of inspecting the area authorized for use . . . for evidence of hazardous conditions which could affect the improvements or pose a risk of injury to individuals." (Doc. 181-4 at 3.) Defendants and Plaintiff each have a different interpretation of the meaning of the word "area" in the permit, with Defendants arguing that "area" refers only to the land itself rather than the structures on it, (Doc. 175 at 7), while Plaintiff argues "area" includes the structures on the land, (Doc. 181 at 8). Plaintiff argues that the Special Use Permit is relevant because it demonstrates that Mount Snow was aware the public would be on the land near the ski lifts and Mount Snow's ownership and control of the land. (*Id.* at 7.) Additionally, Plaintiff argues that the inspection and hazard management requirements found in the Permit provide a duty to inspect for hazards. (*Id.*) Defendants seek to exclude evidence and arguments regarding the contents of the Special Use Permit, arguing that such contents are "irrelevant to Plaintiff's claims[,] . . . risk confusing and misleading the jury[,] and unfairly prejudicing Mount Snow" and would result in a waste of time. (Doc. 175 at 8.)

The court agrees with Defendants and holds that evidence and arguments about the Special Use Permit must be excluded. First, evidence and arguments about a purported "duty to inspect" are irrelevant because, even if the court agrees with Plaintiff's interpretation of the term "area," there has been no argument by either party that Mount Snow did not inspect the "area." In fact, Plaintiff's proffered expert witnesses explicitly mention that Mount Snow inspected the ski lift and

identified the missing chain guarding the edge from which Ms. Keresztessy fell months prior to Ms. Keresztessy's fall. (*See, e.g.*, Doc. 172-2 at 14; Doc. 174-2 at 4.) Plaintiff also emphasized this fact in her Opposition to Defendant's Motion for Summary Judgment. (*See* Doc. 141 at 14.) Even if evidence and arguments about a "duty to inspect" were relevant, such relevance would be substantially outweighed by a risk of misleading the jury as to the applicable duty of care in this case, which, is, at most, a duty to warn.

With respect to Plaintiff's remaining arguments about the Special Use Permit's relevance, the court agrees with Plaintiff that evidence of Mount Snow's ownership and control of the land and knowledge of public use of the land is relevant under Rule 401. Defendants, however, do not dispute Mount Snow's knowledge that the public could be on the land, nor do they dispute that Mount Snow exercised ownership and control over the land. (Doc. 189 at 8.) The probative value of the USFS Special Use Permit with respect to these issues, given that Mount Snow has stipulated to them, is substantially outweighed by a danger of needlessly presenting cumulative evidence and wasting time in violation of Rule 403. As such, evidence and arguments based on the Special Use Permit regarding Mount Snow's knowledge, ownership, and control of the land must be excluded.

Defendants' Motion in Limine, (Doc. 175), is GRANTED. As such, evidence and arguments regarding OSHA regulations, Mount Snow and Vail Resorts' employee fall protection plans, ANSI standards, and Mount Snow's USFS Special Use Permit are excluded.

## III. Inadmissibility of Testimony that Usurps the Role of the Jury

Plaintiff and Defendants' experts seek to offer testimony that would usurp the role of the jury in applying the law to the facts before it by stating ultimate legal conclusions based on issues of fact within the jury's province. Such testimony must be excluded.

Plaintiff and Defendants both offer expert testimony as to whether the risk of falling from the lift was "open and obvious." Defendants' expert Mr. Hammond's report states "[t]here are obvious dangers associated with climbing on the elevated areas, including fall hazards . . . . These risks should have been obvious to [Ms. Keresztessy.]" (Doc. 171-1 at 7.) Plaintiff argues that Mr. Hammond is not qualified to testify as to what Ms. Keresztessy perceived at the time of her fall, as this is "a question about Ms. Keresztessy's own perception[,]" and "whether a missing guardrail and the resulting fall risk were open and obvious is the kind of everyday judgment jurors make without expert help." (Doc. 171 at 16.) One of Plaintiff's experts, Dr. Ian Noy, also seeks to testify as to the openness and obviousness of the open edge, stating "depending on [Ms. Keresztessy's] angle of view and the amount of metal rail and posts at the upper deck, the gap may not have been conspicuous without a careful inspection." (Doc. 172-2 at 30.) Defendants argue this testimony is "unsupported speculation" because Dr. Noy's statements are "not based on any verifiable observations or data." (Doc. 172 at 10.)

The court holds that neither Plaintiff nor Defendants' experts may testify as to the openness and obviousness of the risk of falling. Neither expert is qualified to testify as to what was within Ms. Keresztessy's contemplation at the time of her fall. Such testimony would be purely speculative. *See Major League Baseball Props., Inc., v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (holding that expert testimony "should be excluded if it is speculative or conjectural" (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996))). Furthermore, whether the risk was open or obvious is an issue of the fact that is well within the jury's ability to determine. *See Zhong*, 26 F.4th at 555. Expert testimony in this situation would not be helpful and would in fact usurp the role of the jury in applying the applicable law to the facts in front of it. *See Lumpkin*, 192 F.3d at 289 (citing *Duncan*, 42 F.3d at 101).

Plaintiff's experts also seek to testify as to what Mount Snow "knew" or was aware of. Dr. Noy's report states that "[t]he barriers that existed to restrict unauthorized access to the lift station . . . were ineffective in keeping guests off the lift station, as was known to Mount [S]now management." (Doc. 172-2 at 32.) Mr. Eric Schwartz, another one of Plaintiff's proffered experts, included in his report an assertion that Mount Snow was "aware for many years that members of the public were accessing closed lifts during the summer season despite the warning sign they were using." (Doc. 173-1 at 2.) Mr. Schwartz also stated that it was "common knowledge among mountain operations employees of M[ount] Snow" that people were using nonoperational lifts. (*Id.*) Another expert for the Plaintiff, Mr. Seth Bayer, also seeks to testify that "Mount Snow created dangerous conditions, which they knew about[,] Mount Snow knew summer guests accessed nonoperational lifts[, and] Mount Snow knew summer guests were exposed to fall hazards." (Doc. 174-2 at 29.) None of these experts is qualified to testify as to Mount Snow's knowledge, and any expert testimony as to what Mount Snow knew would be "speculative" and "conjectural." *See Major League Baseball Props.*, 542 F.3d at 311. Additionally, such testimony would plainly usurp the role of the jury, *see Lumpkin*, 192 F.3d at 289, as the jury can make its own determinations based on the facts in the record as to what was within Mount Snow's knowledge, *see Zhong*, 26 F.4th at 555. Such testimony is thus plainly inadmissible and must be excluded.

The court will now address the admissibility of what remains of each expert's proffered testimony. The court will evaluate each expert's testimony in turn.

## IV. Mr. Hammond is Precluded from Testifying as to an "Industry Standard" or "Reasonable Best Practices" for Closing Nonoperational Ski Lifts

Defendants seek to include as an expert Mr. Hammond, the President and Chief Operating Officer of Sugarbush Mountain Resort, located in Warren, Vermont. (Doc. 171-1.) Mr. Hammond

holds a Bachelor of Science in Recreation Management and has worked at Sugarbush for over thirty years in many different capacities, including as Vice President of Mountain Operations and Recreational Services and Director of Ski Patrol. (*Id.* at 2.) Mr. Hammond asserts that he has "overseen all aspects of on-mountain operations at Sugarbush." (*Id.*) He is also a member of the Board of Directors for the Vermont Ski Areas Association and has been a Certified Ski Patroller with the National Ski Patrol since 2002. (*Id.*) Mr. Hammond states that, beginning in 2017, his "experience and observations of resorts expanded to resorts in seven . . . U.S. states and two... Canadian provinces." (*Id.*)

Mr. Hammond seeks to opine about "ski area best practices" including his experience with closing off nonoperational lifts in the summer. (*Id.* at 7–8.) Mr. Hammond notes that he has never heard of someone getting injured by falling off a nonoperational ski lift and that this has not been the subject of "regional and national industry trainings and tradeshows that cover best practices" which he has attended since 2000. (*Id.* at 7.) Mr. Hammond states that "Mount Snow does more than the areas that I have been to in the summer, including my own place of employment, by placing a closure rope with a sign across the entire unload deck." (*Id.* at 8.) Mr. Hammond ultimately concludes that "Mount Snow did more than the reasonable best practices in operating the area[,]" including by placing a sign and a rope on the nonoperational lift which "clearly communicated the closed nature of the platform." (*Id.* at 11.)

Plaintiff challenges several of Mr. Hammond's opinions related to the standard of care for closing nonoperational lifts in the summer. Plaintiff asks the court to preclude Mr. Hammond from testifying that Mount Snow's actions "exceeded" the industry standard, that Mount Snow "does more than is reasonably required" to close nonoperational lifts in the summer, and that Mount Snow "did more than the reasonable best practices in operating the area." (Doc. 171 at 4 (quoting

Doc. 171-2 at 8, 11).) Plaintiff argues that Mr. Hammond is not qualified to offer such testimony and that his opinions are not based on a reliable methodology and would not be helpful to the jury. The court ultimately agrees with Plaintiff that Mr. Hammond should be precluded from testifying as to these matters, as such testimony is not the product of reliable principles and methods but rather is merely the *ipse dixit* of an expert.

Plaintiff argues that Mr. Hammond's standard of care opinions "rest on no methodology at all" and thus qualify as impermissible *ipse dixit*. (Doc. 171 at 8 (citing *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005)).) Mr. Hammond seeks to testify to the "industry standard" in the ski industry for closing nonoperational lifts, (Doc. 171-1 at 8), but also concedes that "there is no defined best practice for closing off the top of a lift in the summer." (*Id.* at 7–8.) Plaintiff asserts, "[a]n opinion that no standard exists—coupled with a conclusion that a party complied with one—is not 'the product of reliable principles and methods.'" (Doc. 171 at 9 (citing *Amorgianos,* 303 F.3d at 265.))

In *Grajeda v. Vail Resorts Inc.,* No. 2:20-cv-00165, 2023 WL 2613543 (D. Vt. Mar. 23, 2023*)*, this district held a ski expert's reliance on sources that were over thirty years old did "not allow the court to determine that his opinion reliably applie[d] modern standards widely accepted in the ski industry." *Id.* at *7 (citing *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999)). In reaching this conclusion, the court relied on *Grdinich v. Bradlees*, which held that "[w]ithout 'industry standards' to rely upon," the plaintiff's expert seemed to impermissibly base his opinion purely "on his own authority." *Id.* at 82. Here, Mr. Hammond's proffered testimony related to the ski industry standard has the same deficiencies. Without a region- or nationwide industry standard to point to, Mr. Hammond appears to be simply relying on his own authority to prescribe the standard. Mr. Hammond's opinions as to "reasonable best practices" and what is "reasonably

required" also suggest an industry standard which Mr. Hammond has conceded does not exist. As such, testimony regarding a region- or nationwide "industry standard" and "reasonable practices" in the ski industry for closing nonoperational lifts in the summer is inadmissible.

Mr. Hammond may not testify as to an unidentifiable "industry standard" that he also concedes does not exist. The court has also already held that testimony about the openness and obviousness of the risk of falling must be excluded. As such, Plaintiff's Motion in Limine to Preclude John Hammond from Testifying as to Standard of Care and Open and Obvious Risks, (Doc. 171), is GRANTED.

## V. Dr. Noy May Testify as an Expert as to the Adequacy of Mount Snow's Warnings

Plaintiff seeks to introduce Dr. Noy as an expert witness. Dr. Noy has a Ph.D. in Industrial Engineering (Human Factors) and is a board-certified Professional Ergonomist. (Doc. 178-2 at 2.) Dr. Noy has an "extensive background in innovative and applied safety research," has authored numerous publications and technical reports, and has "[p]erformed and directed peer-reviewed studies of human-system interactions." (*Id.*) Dr. Noy's relevant experience includes directing a scientific research program "aimed at prevention of injuries and disabilities." (*Id.* at 3.) Dr. Noy has received several awards and honors related to his work in human factors and ergonomics. (*Id.* at 5.)

In his expert report, Dr. Noy concludes that Ms. Keresztessy's fall was a foreseeable event and that the warnings and barriers that Mount Snow employed were inadequate to prevent her fall. (Doc. 178-3 at 4.) Dr. Noy's conclusions rest on "Affordance Theory." Dr. Noy describes this theory as the concept that "the environment offers people opportunities for action and that people exploit or transform these opportunities to derive utility (whether intended by equipment provider/operator or not)." (Doc. 172-2 at 25–26.) Dr. Noy posits that "the nonoperational lift

provided an opportunity for guests such as . . . Ms. Keresztessy . . . to obtain spectacular photographs of the mountainside and capture extraordinary moments, thereby increasing the value of the outing." (*Id.* at 26.) He further asserts that "[i]n the terminology of ecological psychology, [the upper deck of the lift station] presented opportunities for action that were functionally attractive with relatively little perceived cost." (*Id.*)

Dr. Noy argues that, in light of Affordance Theory, "without overt measures to keep guests off nonoperational lifts, climbing the lift station was a foreseeable behavior." (*Id.* at 27.) Dr. Noy also contends that both the warning and the rope were inadequate in light of Affordance Theory. (*Id.*) In his report, Dr. Noy focuses on the fact that the rope was "easy to step over" and the fact that the sign only suggested "that the danger in accessing the lift station was that it could start at any time" without mention of a risk of falling. (*Id.*) Dr. Noy presents in his report the conclusion that warning of a "condition that was not credible" and placing a "low rope" at the lift constituted ineffective methods to keep guests off the nonoperational lift. (*Id.* at 32.)

Dr. Noy is not qualified to testify that Ms. Keresztessy's fall was a "foreseeable event." The "foreseeability" of Ms. Keresztessy's fall goes to whether Mount Snow, as the possessor of land, knew that the unprotected edge was "likely to cause death or serious bodily harm." Restatement (Second) of Torts § 335 (A.L.I. 1965). It is the jury's role to make legal conclusions based on the facts at issue. *See Bilzerian*, 926 F.2d at 1295. Dr. Noy, in stating that her fall was foreseeable, would be, in effect, telling the jury what result to reach. *See Duncan*, 42 F.3d at 101. Rewording the testimony to exclude the word "foreseeable" as Plaintiff suggested in her Response, (Doc.178 at 13), would not resolve this defect, as, regardless of his exact phrasing, Dr. Noy would be seeking to testify as to a legal conclusion he is not qualified to make. As such, Dr. Noy cannot testify about the foreseeability of Ms. Keresztessy's fall.

Dr. Noy also may not testify as to the adequacy of the barriers to prevent guests from climbing lifts, as such testimony is plainly irrelevant. The court has already supplied the duty of care, which does not include a duty to place barriers around the artificial condition at issue. Additionally, even if such testimony were relevant, it would be substantially outweighed by a risk of misleading the jury as to the applicable duty of care.

The court finds, however, that Dr. Noy may testify, in light of Affordance Theory, that the warning on the lift was inadequate. Dr. Noy's testimony presents specialized knowledge of Affordance Theory, a concept with which the jury is likely unfamiliar. Dr. Noy's testimony will assist the jury in determining whether the warning was adequate given that, according to his application of Affordance Theory, the nonoperational lift "presented opportunities for action that were functionally attractive with relatively little perceived cost." (Doc. 172-2 at 26.) Dr. Noy's Affordance Theory testimony is based on reputable academic sources that he cites in his report. (*See id.* at 25–26; *see also Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, No. 17-cv-6980, 2025 WL 1907206, at *11 (E.D.N.Y. July 10, 2025) (permitting a human factors expert to testify as to the adequacy of a warning based on his review of materials including "other experts' reports, human factors literature," and the warnings at issue.); *Jenks v. N.H. Motor Speedway*, No. 09-CV-205, 2012 WL 405479, at *5 (D.N.H. Feb. 8, 2012) (permitting a human factors expert to testify as to the adequacy of a warning because "[t]he theories and methods upon which he relie[d] are recognized in his field, and his knowledge of warnings and their proper design may be helpful to the jury.")). To the extent that Defendants doubt the validity of Affordance Theory and Dr. Noy's conclusions, "[v]igorous cross-examination" and "presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Dr. Noy is permitted to testify in a limited capacity in this matter. He may testify, based on his application of Affordance Theory, about the adequacy of the warning on the nonoperational lift. He may not, however, testify about the adequacy of the barriers on the lift or the foreseeability of Ms. Keresztessy's fall. Defendants' Motion to Exclude or Limit the Testimony of Ian Noy, (Doc. 172), is thus GRANTED in part and DENIED in part.

### VI. Mr. Schwartz May Testify in a Limited Capacity Based on His Experience in and Observations of the Ski Industry

Plaintiff seeks to introduce Eric Schwartz as an expert witness. Mr. Schwartz has "24 years of experience in the ski industry, 22 of which [were] spent in lift maintenance mainly in leadership roles which included creating language for and ensuring required signage was in place regarding lift operations and lift maintenance." (Doc. 173-1 at 4.) He is a graduate of the Colorado Mountain College lift maintenance apprenticeship program. (*Id.* at 5.) Mr. Schwartz works as a Lead Lift Mechanic at Big Sky Resort. (*Id.* at 2.) He has attended industry conferences "to receive the most up to date training and industry trend discussions in the North American ski lift operations and maintenance industry." (*Id.* at 5.)

As stated earlier, Mr. Schwartz may not testify that Mount Snow employees knew members of the public accessed closed lifts during the summer. Mr. Schwartz's report continues that "the best practice should have placed an even higher priority on M[ount] Snow ensuring . . . that all guards are in place, but also in best practice could have resulted in better signage and better barricades in this location." (*Id.* at 2.) Mr. Schwartz's opinion regarding best practice is also inadmissible. Mr. Schwartz testified that he has not been to a training where "industry best practices on how to close lifts in the summer" has been on the agenda. (Doc. 173-2 at 6.) He further testified that he is unaware of any published materials describing requirements to be used in closing off lifts in the summer. (*Id.*) While he has read many articles about ski area

management, he cannot remember seeing any articles about closing off lifts in the summer. (*Id.*) During his deposition, Mr. Schwartz testified that the basis of his opinion about best practice is "from [his] experience on the hill and seeing what works and what doesn't." (*Id.* at 26.) Indeed, he stated that he hoped this case could result in recommendations regarding the summertime closure of lifts. (*Id.* at 17). In sum, Mr. Schwartz's establishes that there is no "best practice," but only that he hopes one will be developed. Without a "best practice" to rely on and compare to, Mr. Schwartz appears to base his opinions on his own personal beliefs as to what the "best practice" should be. *See Grdinich*, 187 F.R.D. at 82.

Next, Mr. Schwartz opines that Mount Snow employees were aware of the unprotected edge on the closed lift and had been aware for several months. (Doc. 173-1 at 2.) He further states that Mount Snow's employees acknowledge that fixing the broken guardrail would come at a minimal expense. (*Id.*) Mount Snow's knowledge of the unprotected edge will be a pertinent issue in the trial. The Restatement (Second) of Torts § 335 requires Plaintiff to establish that Mount Snow created or maintained an artificial condition and that the condition was likely to cause death or serious bodily injury. Mr. Schwartz's conclusions, however, are based on his review of other witnesses' testimony. He does not use specialized knowledge or experience to interpret or evaluate the testimony of the fact witnesses regarding the missing guardrail. A juror could listen to the witness's testimony regarding these facts and reach their own conclusion regarding what Mount Snow knew and when. Mr. Schwartz's testimony, here, does not assist the factfinder. These opinions are thus inadmissible.

Next, Mr. Schwartz opines that Mount Snow employees would request guests accessing closed lifts to remove themselves from the area and never reported these incidents to managers. (*Id.* at 2). This testimony is also inadmissible. Mr. Schwartz makes these statements based on a

review of other testimony and evidence. Again, Mr. Schwartz applies no specialized knowledge to these facts to allow him to reach the conclusion that he does. Jurors can listen to and make conclusions about this testimony. He further opines that "members of the public were clearly accessing these closed lifts far more often than staff observed." (*Id.*) He indicates his opinion is supported by photographs and a video posted by others on social media. (*See id.* at 2–3.) This testimony is also inadmissible. His conclusion does not require any specialized knowledge or testimony. If these photographs and video are admitted, the jury does not need specialized knowledge to reach the conclusion offered by Mr. Schwartz. Additionally, Mr. Schwartz should not be a vehicle through which otherwise inadmissible evidence is introduced to the jury.

Mr. Schwartz also seeks to testify that it is "common knowledge in the ski industry," that individuals access closed lifts during the summer. (*Id.* at 3.) Other than his own experiences and a review of the evidence in this case, Mr. Schwartz does not articulate on what basis he forms this opinion. For this reason, this opinion is also inadmissible. If his opinion is merely based on his own experiences and those of other witnesses, this information may be presented to the jury for their consideration.

Mr. Schwartz concludes the section of his report entitled, "Summary of Opinions," by stating,

> My overall opinion on the matter is that *Mt. Snow, LTD, et al* had a minimum duty to have all required safety barriers in place on Sundance Lift. They recognized it in internal safety audits, discussed it, and then failed to act. It was not prohibitively costly or time consuming to have replaced the simple cable handrail that was missing when Faith Keresztessy fell.

(*Id.* at 3.) This opinion is inadmissible for several reasons. First, this testimony confuses the duty of care imposed on Mount Snow, which, as discussed above, is a duty to warn. Mount Snow did not owe Ms. Keresztessy the duty of fixing or replacing a cable on the lift. The question the jury

will be asked is whether Mount Snow had a duty to warn, and if they did, whether they exercised reasonable care in providing the warning. Additionally, Mr. Schwartz compares Mount Snow's actions to several policies or regulations which are not relevant to the issues in the case. For example, Mr. Schwartz seeks to testify about Mount Snow's Lift Maintenance Department Guidelines. Such guidelines specifically only apply when machinery is operating. (*See id.* at 4.) The portions of the guidelines Mr. Schwartz cites specifically state "[g]uards must be in the place . . . when operating tools and equipment." (*Id.*) Testimony as to what guards should be in place is also irrelevant because the court has already found that Mount Snow had, if any duty at all, merely a duty to warn, rather than a duty to erect barriers. Mr. Schwartz also cites to the Fall Protection Plans, the USFS Special Permit and other regulations. As stated above, these regulations and policies are not relevant to the issues in this case.

Mr. Schwartz has experience in developing and erecting signs around lifts. In *Difrancesco v. Win-Sum Ski Corp.*, No. 13CV148, 2017 WL 1046741 (W.D.N.Y. Mar. 20, 2017), an expert sought to testify, based on his forty years of experience operating ski lifts and in the ski industry in general, about "customary chairlift signage or sign location." *Id.* at *14. As is the case with Mr. Schwartz, the basis for the expert's opinions in *Difrancesco* was "his observation of practices at ski areas and what he believes to be best practices." *Id.* The court there held that the expert lacked a foundation for a "broader opinion" on "continental practices regarding where . . . signs are placed" such that he could "only testify to his observations." *Id.*

In accordance with *Difrancesco*, Mr. Schwartz may testify as to his observations from his experience in the ski industry. Such testimony is helpful to the jury, as the average juror is likely unaware of what typical signage to close nonoperational lifts looks like and how ski areas tend to close off nonoperational lifts. As such, Mr. Schwartz may testify as to his experience with creating

and placing signage to prohibit access to closed lifts. He may also testify as to his personal experiences with the public accessing nonoperational lifts.

Much of Mr. Schwartz's testimony is inadmissible. His experience in the ski industry with seeing guests accessing nonoperational lifts and creating warnings to limit access to nonoperational lifts, however, is relevant and will assist the jury in making its findings. Mr. Schwartz's testimony is therefore limited to those issues, and Defendants' Motion in Limine to Exclude Eric Schwartz, (Doc. 173), is DENIED.

## VII. Mr. Bayer is Excluded from Testifying as an Expert

Plaintiff seeks to have Mr. Seth Bayer, P.E., testify as an expert witness. Mr. Bayer is a professional engineer with experience in accident reconstruction, including ski area accidents. (Doc. 179-1 at 2–3.)

Mr. Bayer seeks to testify as to the adequacy of Mount Snow's response to discovering that the cable that guarded the opening through which Ms. Keresztessy fell was missing. In his report, Mr. Bayer compares Mount Snow's response to his experience at "geothermal power generation facilities" where he contends that, if a hazard were identified, "it would be mitigated rapidly" in compliance with what he contends is the industry standard for operating industrial equipment. (Doc. 174-2 at 25.) Based on his experience with hazard mitigation, Mr. Bayer concludes that "[h]azard mitigation was not prioritized" by Mount Snow. (*Id.* at 27.)

Mr. Bayer also seeks to testify as to the need for adequate guarding of the edge from which Ms. Keresztessy fell. His conclusions regarding the importance of guarding rest on his experience with an "engineering safety hierarchy." (*Id.* at 20.) According to Mr. Bayer, providing a warning is "the third item on the safety hierarchy" behind "design[ing] out the hazard" and "guard[ing] the hazard to isolate people from it." (*Id.* at 20.) Regarding Mount Snow's warning, Mr. Bayer

contends the warning was inadequate as the "sign failed to convey any information as to the actual hazard that existed." (*Id.* at 28.)

In his report, Mr. Bayer also emphasizes the importance of the missing cable being in place, arguing that "[t]he cable would have created a visual cue and a physical barrier to the fall hazard[,]" and that "[t]raining is not as effective as guarding. Guarding provides a higher order for hazard reduction." (*Id.* at 19, 26.) Mr. Bayer also posits, based on Ms. Keresztessy's "center of mass height, according to anthropomorphic data," that were a cable in place, it would have prevented Ms. Keresztessy's fall. (*Id.* at 18–19.)

Mr. Bayer is excluded from testifying, as his opinions are irrelevant and not based on reliable principles and methods. First, Mr. Bayer's testimony is largely irrelevant. Much of Mr. Bayer's testimony is based on engineering controls and hazard elimination, and the issue in this case is centered around a duty to warn. Mr. Bayer posits that Mount Snow did not adequately engage in "hazard elimination" because providing a warning is "the third item on the safety hierarchy." (*Id.* at 20.) Mr. Bayer also criticizes Mount Snow's response to discovering the missing cable, (*id.* at 20, 26–27), and argues that Ms. Keresztessy would not have fallen had there been a cable blocking the opening through which she fell, (*id.* at 18–19.) Such testimony is plainly irrelevant. As Defendants state, "hazard elimination is not at issue in this case." (Doc. 194 at 7.) Mount Snow had, at most, a duty to warn, not a duty to eliminate hazards from nonoperational chairlifts. Such testimony also runs the risk of confusing the issues and misleading the jury as to what Mount Snow's duty was in this case.

Mr. Bayer's testimony as to warnings is also deficient, as he does not base his critiques on reliable principles and methods. Mr. Bayer does not cite to any research or studies on warnings, nor does he explain how his experience with warnings helped him evaluate the adequacy of the

warnings in this case. Without such support, Mr. Bayer's testimony as to warnings is merely *ipse dixit* and must be excluded. *See Rutledge*, 182 F.4th at 184.

Mr. Bayer's proffered expert testimony is inadmissible. His testimony is irrelevant. Additionally, testimony regarding the "safety hierarchy" could mislead or confuse the jury as to the applicable duty of care. As such, Mr. Bayer is excluded from testifying as an expert in this case, and Defendants' Motion to Exclude or Limit the Testimony of Seth Bayer, P.E., (Doc. 174), is GRANTED.

## Conclusion

Defendants' Motion in Limine to exclude evidence and arguments on OSHA regulations, employee fall protection policies, ANSI standards, and the USFS Special Use Permit (Doc. 175) is GRANTED. As such, there shall be no evidence or arguments on those subjects. Plaintiff's Motion in Limine to Exclude John Hammond from Testifying Contrary to ANSI, (Doc. 170), is thus DENIED as moot. The court also holds that the parties' experts may not offer improper legal conclusions that usurp the role of the jury, including opinions regarding the openness and obviousness of the risk of Ms. Keresztessy falling and Mount Snow's knowledge.

Mr. Hammond may not describe a region- or nationwide industry standard that he concedes does not exist, nor may he testify as to the openness and obviousness of the risk of falling. As such, Plaintiff's Motion in Limine to Preclude John Hammond from testifying as to Standard of Care and Open and Obvious Risks (Doc. 171) is GRANTED.

Dr. Noy may testify in a limited capacity as to the adequacy of Mount Snow's warnings based on his analysis of Affordance Theory, as such testimony is based on reliable principles and methods and would aid the jury in making its determinations. Dr. Noy may not testify, however, as to the "foreseeability" of Ms. Keresztessy's fall or as to the adequacy of barriers on the lift.

Defendants' Motion to Exclude or Limit the Testimony of Ian Noy (Doc. 172) is GRANTED in part and DENIED in part. Mr. Schwartz's testimony is similarly limited to offering opinions based on his experience in the ski industry. Defendants' Motion to Exclude Eric Schwartz (Doc. 173) is GRANTED in part and DENIED in part.

Mr. Bayer's testimony is irrelevant and could be misleading or confusing to the jury. As such, Mr. Bayer is excluded from testifying as an expert in this case. Defendants' Motion to Limit or Exclude the Testimony of Seth W. Bayer, P.E., (Doc. 174) is thus GRANTED.

DATED at Rutland, in the District of Vermont, this 25th day of November 2026.

Mary Kay Lanthier
United States District Judge